**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**


**UNITED STATES OF AMERICA**


**v.**                                                          **Criminal No.: 4:05cr58**


**HAROLD KNOX,**

                    **Defendant.**


### OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss the Indictment, or

in the Alternative, to Compel Compliance with Previous Court Orders and to Extend the Trial

Date, filed on November 15, 2005.  (Doc. 17.)  Specifically, Defendant contends that the

Government is not in compliance with its obligations to produce exculpatory and other evidence,

as required by Brady v. Maryland, 373 U.S. 83 (1963), and by previous court order, and that its

failures require dismissal of the Indictment.  Defendant's Memorandum in Support of Motion to

Dismiss at 7-9 [hereinafter "Def.'s Mem."].  (Doc. 17.)  In the alternative, Defendant requests the

Court to order the Government to comply with previous court orders and produce all previously

unproduced evidence in a manner that is decipherable to the defense.  Id. at 9.  On November 16,

2005, the Government submitted its Response, in which it moves the Court to grant Defendant's

Motion to Extend the Trial Date and deny Defendant's Motion to Dismiss and Motion to

Compel.  Government's Response at 1 [hereinafter "Govt.'s Resp."].  (Doc. 21.) Defendant filed

his Reply on November 17, 2005.  (Doc. 22.)

The Court heard arguments in open court on November 17, 2005, and ruled from the

bench, DENYING Defendant's Motion to Dismiss, GRANTING Defendant's Motion to Extend the

Trial Date, and GRANTING Defendant's Motion to Compel Compliance with Previous Court

Orders, in accordance with the Court's specific orders requiring a timetable for future discovery

disclosures.[1]  This Opinion and Order further explains the Court's ruling.

## I. Procedural Background and Factual History

Defendant was taken into custody in March 21, 2001, for offenses relating to a string of

bank robberies and related firearms offenses that took place between 1983 and 2000 in Virginia

and North Carolina.  On April 5, 2001, Defendant was indicted in the Richmond Division of the

United States District Court for the Eastern District of Virginia for these offenses.  On June 5,

2001, a Superseding Indictment was filed, alleging additional charges related to the bank

robberies.  On April 18, 2001, an Agreed Discovery Order was entered between the Government

and Defendant pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure, which detailed

the Government's obligations in responding to discovery and exculpatory evidence requests.  By

Order, filed September 26, 2001,[2] United States District Judge Robert E. Payne, issued a detailed

---

[1]The Court's ruling regarding the specific timetable for future discovery disclosures is as follows:
By December 19, 2005, the Government is hereby **ORDERED** to
1) deliver all documents and tangible evidence to Defendant in Newport News that will comply with Brady,
Judge Payne's prior Order, and discovery required for the instant indictment;
2) reproduce all exculpatory evidence and deliver it to Defendant in Newport News, together with a
complete index of all exculpatory evidence;
3) file the index of all exculpatory evidence with the Court and certify to the Court that it has complied with
items (1) and (2); and
4) certify to the Court that it has exhausted its efforts to locate any and all documents and physical evidence
which comply with Brady, Judge Payne's prior Order, and discovery required for the instant indictment.
By January 13, 2006, the Government is hereby **ORDERED** to
1) deliver to Defendant an index of all discovery documents and physical evidence; and
2) file a copy of such index with the Court and certify to the Court that an index of all the documents and
physical evidence has been compiled and delivered to Defendant.
The Court further **ORDERS** that any document and its content or physical evidence that is not delivered
and indexed by the deadlines set by this Order will be excluded from evidence and not used at trial in original or by
secondary testimony.

[2]Judge Payne's Order memorialized his rulings from the bench on September 6, 2001.

-2-

criticism of the Government's failure to comply with its required disclosure obligations pursuant to the Agreed Discovery Order and its affirmative Brady disclosures, and sanctioned the Government by precluding it from offering any DNA evidence at  trial.  See Def.'s Mem. Mot. Trans., Ex. 3 [hereinafter "Judge Payne's Order"].  Judge Payne also continued the trial until November 28, 2001, to give the Government an opportunity to cure its discovery failures and ordered the Government to make the following disclosures by September 20, 2001:

> 1) certification that the government searched all Government files and files from every (state and federal) law enforcement agency that investigated the alleged offenses;

> 2) all documents relating to the case discovered during the search of all files that had not been previously provided;

> 3) copies of all documents seized from the defendants, photographs of other tangible items seized from defendants, legible copies of all videotapes and photographs relating to the case that the Government did possess, know of, or through the exercise of reasonable diligence, should know of;

> 4) a list of all exhibits that it intended or proposed to use at trial, copies of any exhibits, and a list of all witnesses that it intended or proposed to call to testify at trial; and

> 5) all documents referenced as attachments to the Franklin County Police Department reports regarding the May 1, 1999, robbery of the Bank of Southside in Franklin, Virginia.

Def.'s Mem., Ex. 1, at 108-14 (Transcript from the September 6, 2001, hearing).  By September 10, 2001, Judge Payne also required the Government to the turn over the addresses, phone numbers, and means of contacting each of the witnesses whose identifying information had been blacked out in the 891 pages of materials that had previously been provided to the defense and to explain the organization of the 891 pages of information.  Id. at 108-09.  Despite the Government's opportunity to cure its discovery failures, the Government subsequently moved the Court to dismiss the indictment without prejudice.  On November 20, 2001, one week before the rescheduled trial date, Judge Payne granted the Government's motion.

Thereafter, Defendant was placed in state custody to stand trial for state charges relating to the same acts for which he had been previously indicted in the Richmond prosecution.  On February 4, 2002, the Commonwealth of Virginia indicted Defendant in the Virginia Beach Circuit Court on thirty-seven (37) bank robbery charges.  Def.'s Mem. Mot. Trans., Ex. 5.  On or around February 18, 2003, twelve (12) of those charges were nolle prossed and Defendant was scheduled to stand trial on the remaining state charges.  Id., Ex. 6.  However, the Government decided to reinstate its federal prosecution for these offenses.  On July 11, 2005, the instant Criminal Indictment[3] was filed in the Newport News Division.  Consequently, the remaining state charges were also nolle prossed and the Defendant was returned to federal custody.

On August 19, 2005, the parties entered into a joint discovery order, pursuant to Rule 16 of the Federal Rules of Criminal Procedure.  (Doc. 8.)  On October 21, 2005, Defendant filed a Motion to Transfer Venue to the Richmond Division.  By Order, dated November 10, 2005, the Court denied the Motion, but included in that Order a request that Defendant's record from the Richmond prosecution be transferred to the Norfolk Division so that Defendant may prepare for trial.  (Doc. 16.)  At the Motion to Transfer hearing, held on November 8, 2005, the Court also ordered that the Government's file, which had been located in Richmond, be made available for inspection in Newport News by 1:00 p.m. the following day, November 9, 2005.  On that day, the parties met in Newport News as directed by the Court and reviewed the file.  The discovery that was produced by the Government on that date amounts to four banker boxes of documents and two car loads of physical evidence.  Govt.'s Resp. at 3.  Nevertheless, during the course of the

---

[3]The Indictment charges Defendant with:

    Count One – conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371;

    Counts Two and Three – unlawfully and knowingly taking by force from another money belonging to banks insured by the FDIC, and in so doing did put in jeopardy the lives of employees and customers by the use of firearms, in violation of 18 U.S.C. § 2113(a) and (d); and

    Counts Four and Five – using and carrying semi-automatic weapons and other weapons during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

-4-

meeting, the parties discovered that the file might be incomplete, lacking potentially exculpatory evidence and other discovery materials related to the charged offenses. Id. at 3, 10; Def.'s Mem. at 5. Defendant's trial is scheduled to commence on November 28, 2005.

While there is no dispute that not all the discovery has been accounted for in this case, the parties dispute whether the Government is in compliance with its discovery obligations and what action should be taken in light of the incompleteness of the discovery file. Thus, the Court shall consider whether the Government's actions in this case satisfy its Brady disclosure obligations, as well as its obligations under Judge Payne's Order, and whether the Government's disclosure has been, or will be, made within a time that will allow the Defendant to make effective use of exculpatory evidence at trial. The Court shall then consider what actions will appropriately redress the current state of discovery.

## II. GOVERNMENT'S COMPLIANCE WITH DISCOVERY OBLIGATIONS

### A. Standard of Review

The Government's discovery obligations are governed by Brady v. Maryland and its progeny, as well as by Judge Payne's Order in the Richmond prosecution.[4] In Brady v. Maryland, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Evidence is considered "material" if there is a reasonable probability that it will affect the result of the proceeding. United States v. Cole, 293 F.3d 153, 163 (4th Cir. 2002) (citing United States v. Bagley, 473 U.S. 667, 682 (1985)).

---

[4]The Government's discovery obligations are also governed by the joint discovery order, which requires particular discovery disclosures pursuant to Rule 16 of the Federal Rules of Criminal Procedure. The Court will analyze the Government's compliance under Judge Payne's Order because it includes, but is not limited to, the obligations imposed upon the Government in the joint discovery order, and represents the full range of the Government's discovery obligations in this case.

In general, the Government's obligation to produce <u>Brady</u> material does not automatically arise upon filing an indictment.  However, the Supreme Court has held that the Government bears an affirmative burden to "actively search out . . . requested material in its files and in the files of related agencies reasonably expected to have possession of such information." <u>United States v. Beckford</u>, 962 F. Supp. 780, 785 (E.D. Va. 1997) (citing <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995) and <u>United States v. Agurs</u>, 427 U.S. 97 (1976)).  Furthermore, in <u>United States v. Agurs</u>, the Supreme Court held that the Government has an affirmative duty to produce exculpatory evidence in the absence of a specific request by Defendant, where the evidence is "of sufficient significance to result in the denial of the defendant's right to a fair trial." <u>Agurs</u>, 427 U.S. at 107-08; <u>see also</u> <u>Kyles v. Whitley</u>, 514 U.S. at 432; <u>United States v. Cuong Gia Le</u>, 306 F. Supp. 2d 589, 591-92 (E.D. Va. 2004).

In addition to the foregoing <u>Brady</u> obligations, the Government is also under a broader duty to disclose discovery evidence pursuant to Judge Payne's Order, which this Court adopts. Judge Payne considered the nature of the exculpatory evidence at issue in this case, as well as the Government's preexisting discovery failures, before detailing the specific disclosures that the Government must undertake to satisfy its full discovery obligations in this case.  Judge Payne's Order directed the Government to turn over *all* documents relating to the case – not only exculpatory evidence – discovered through a subsequent search of all Government and agency files that had not been previously produced, and to certify to the Court that its search and production had been accomplished.  Def.'s Mem., Ex. 1, at 108-14.  In addition, due to the vast amount of discovery amassed, the Government was ordered to organize the evidence in a decipherable manner so that it could be of meaningful use to the Defendant.  <u>Id</u>.

There is insufficient evidence before the Court to determine whether the Government completed compliance with Judge Payne's Order before it sought leave to dismiss the case

approximately two months after the Order was issued.  Nevertheless, in arguing the motion to dismiss the 2001 indictment, the Government stated that the motion was not made in bad faith, but, in part, "to ensure that, in the event there is ever another federal prosecution growing out of these bank robberies, the prosecution would proceed with a full, orderly, and complete disclosure of all discovery and <u>Brady</u> material," pursuant to Judge Payne's Order.  Def.'s Mem., Ex. 3, at 2.

## B. Discussion

Given the all-encompassing nature of the affirmative obligations placed upon the Government by Judge Payne's Order and the Government's awareness that its obligations thereunder carry forward into the present prosecution, it appears to the Court that the Government's discovery efforts in this subsequent federal prosecution fall short of the "full, orderly and complete" disclosure originally agreed upon by the Government.  Upon filing the instant Indictment, the Government was under a preexisting duty to comply with Judge Payne's Order, in addition to its underlying <u>Brady</u> obligations.  While the Government does not claim that Judge Payne's Order should not be complied with in this case, it indicates that its "open file" policy should cure any claims of prejudice arising from "a possible technical violation of Judge Payne's order four years ago."  Govt.'s Resp. at 5 n.1.  The Court will review the Government's "open file" policy and recent disclosures to assess the extent of the Government's compliance with its discovery obligations in this case.

On August 19, 2005, the Government declared that it would conduct a "open file" policy[5] for discovery and provided Defendant with the name and number of the FBI agent in charge of the Richmond prosecution so that the Defendant could arrange a review of the discovery materials pursuant to that policy.  While an "open file" policy can serve a useful function in

---

[5]The Government asserts that this unusual "open file" policy was adopted because the U.S. Attorney was preparing for a three-week trial, which made him difficult to contact during working hours.  Govt.'s. Resp. at 2.

facilitating discovery, it also raises particular concerns regarding the extent to which the Government relies upon that policy to meet specific disclosure obligations. In <u>United States v. Duncan</u>, the Fourth Circuit observed that an "open file" policy may serve as a means to supplement the Government's disclosure obligations; however, it cannot function as a substitute for the Government's compliance with its discovery obligations pursuant to Rule 16 of the Federal Rules of Criminal Procedure. <u>United States v. Duncan</u>, 598 F.2d 839, 856-57 (4th Cir. 1979). In the context of <u>Brady</u> disclosures, the Supreme Court has found an "open file" policy especially problematic where, as here, there may be evidence missing from that file that could potentially be exculpatory. <u>See</u> <u>Banks v. Dretke</u>, 540 U.S. 668, 692 (2004); <u>Strickler v. Greene</u>, 527 U.S. 263, 282-83 (1999).

The facts indicate that within the first four months of this prosecution, the Government relied upon Defendant to avail himself of the "open file" policy in order to fulfill its court-ordered and <u>Brady</u> obligations. During this time, the Government turned over only one envelope of documents upon Defendant's request, but undertook no further actions to produce discovery. Govt.'s Resp. at 2; Defendant's Reply at 2 [hereinafter "Def.'s Reply"]. Furthermore, it does not appear to the Court that the Government completed its review of the discovery materials for compliance with <u>Brady</u> or with Judge Payne's Order, nor did the Government transfer the discovery materials from Richmond to Newport News, where it chose to indict Defendant.[6] Placing the burden upon defense counsel to call the agent to request documents and physical

---

[6]The parties dispute whether the Defendant adequately "availed" himself of the "open file" policy. Govt.'s Resp. at 4; Def.'s Reply at 1. The Government contends that defense counsel contacted the FBI agent on September 15, 2005, requesting certain documents, and stated that he would contact the agent concerning additional discovery, but that no other contact was made. Govt.'s Resp. at 2. However, Defendant contends that "[u]pon being told . . . of the 'open file' policy, defense counsel immediately asked [the Government] to have the files brought from Richmond to Newport News so that defense counsel could take advantage of this policy." Def.'s Reply at 1. While it is not prudent for the Court to involve itself in these types of discovery squabbles, in this case it is also unnecessary in light of the fact that the Government's affirmative discovery obligations place the burden of production upon the Government, regardless of whether the Defendant did or didn't make particular discovery requests or arrangements.

evidence to be brought to Newport News is unacceptable in light of Judge Payne's Order, which requires full, affirmative production of all documents not previously produced after a thorough search of all the files involved in the investigated this case.  See Def.'s Mem., Ex. 1, at 108-14. Thus, it appears to the Court that the Government relied upon its "open file" policy as a substitute for its affirmative disclosure obligations, which is inadequate given the Government's history regarding discovery and the terms of Judge Payne's Order.

In addition to the Government's inadequate disclosure during the first four months of this prosecution, the events of November 9, 2005, confirm that further discovery shortcomings have occurred in this case.  On that date, pursuant to the Court's direction at the November 8, 2005, hearing, the Government transferred the file from Richmond to Newport News so that the Defendant could conduct a review of the file.  Despite the substantial volume of that file, many documents were found to be missing, unidentified or located with other FBI agents in and outside of Virginia.  Govt.'s Resp. at 3; Def.'s Mem. at 7.  For example, the file was missing, inter alia, items processed for DNA, some transcripts of witness testimony, and all documents relating to three separate robberies.  Id.  Some of the evidence that was not part of the file is identified by both parties as potentially exculpatory.  Govt.'s Resp. at 3, 10; Def.'s Mem. at 8.  When the deficiencies of the discovery file became apparent to the parties, the Government attempted to contact those involved with the original federal prosecution to determine whether the court-ordered production and certification had been made before the dismissal, whether all exculpatory documents were made part of the Government's file, and to identify and locate items not found in the file.  Govt.'s Resp. at 3-4, 7-10.

Despite these efforts, the Court finds that the Government's November 9, 2005 disclosures do not comply with its discovery obligations since the Government cannot certify that the file contains all required materials pursuant to the court-ordered search of all files and

because the file may be missing potentially exculpatory evidence that has yet to be identified, located and produced.  See Strickler, 527 U.S. at 283 n.23 (noting that where the prosecution relies upon an "open file" policy to produce Brady material, defense counsel may also rely on that file to contain all materials that the Government is obligated to disclose).  Moreover, the Government's pledge of immediate, expedited efforts to identify and locate missing information going forward does not mitigate its nominal disclosure efforts during the first four months of this prosecution.

Nevertheless, despite the Government's past and present discovery failures, the Court's analysis is guided by the underlying principle of ensuring the fairness of the trial.  See Cuong Gia Le, 306 F. Supp. 2d at 592; Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842, 847 (4th Cir. 1964) ("In gauging the nondisclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel.").  Thus, given the current state of discovery, the Court must now consider whether the Government will be able to come into compliance within a time that will preserve Defendant's right to a fair trial.

The basic tenet of Brady v. Maryland is that evidence favorable to the defendant must be produced in a time for effective use at trial.  United States v. Smith Grading and Paving, Inc., 760 F.2d 527, 531 (4th Cir. 1985), cert. denied, 474 U.S. 1005 (1985).  While the precise timeframe for producing Brady material must be decided on a case-by-case basis based upon the nature of the evidence in question, in circumstances where exculpatory information requires significant pre-trial investigation, the evidence should be produced well before trial for it to be of meaningful use to the defendant.  See Beckford, 962 F. Supp. at 789; Cuong Gia Le, 306 F. Supp. 2d at 592.

While a substantial amount of the exculpatory evidence and court-ordered discovery was produced on November 9, 2005, due to the incomplete and disorganized state of the materials,

-10-

the Government's late production does not satisfy <u>Brady</u>.  Given the amount of discovery

amassed and the multiplicity of offenses involved in this case, the Court acknowledges that

coming into compliance will be a tedious and time-consuming undertaking on the Government's

part.[7]  More importantly, there is a strong possibility that some exculpatory material may not be

turned over to the Defendant in time for trial preparation.  In all likelihood, Defendant may be

required to conduct significant pre-trial investigation, such as contacting witnesses, obtaining

subpoenas, and developing defenses based upon the exculpatory evidence provided.  In such

circumstances, it is inescapably clear that the Government will not be able to comply with its

required disclosures within a time that will allow the Defendant effective use of exculpatory

evidence at trial in accordance with <u>Brady v. Maryland</u>.  Thus, the Court must consider what

remedy will appropriately redress the Government's current failure to abide by its constitutional

and court-ordered discovery obligations.

### III. APPROPRIATE REMEDY FOR THE GOVERNMENT'S DISCOVERY FAILURES

**A. Standard of Review**

        The Court's analysis begins with the principle that "[w]hen a court sanctions the

government in a criminal case for its failure to obey court orders, it must use the least severe

sanction which will adequately punish the government and secure future compliance."  <u>United

States v. Hastings</u>, 126 F.3d 310, 317 (4th Cir. 1997), <u>cert</u>. <u>denied</u>, 523 U.S. 1060 (1998); <u>see

also</u> <u>United States v. Derrick</u>, 163 F.3d 799, 807-08 (4th Cir. 1998).  In <u>Hastings</u>, the Fourth

Circuit set forth the following guidelines for redressing governmental discovery failures:

> a court must weigh the reasons for the government's delay and whether it acted
> intentionally or in bad faith; the degree of prejudice, if any, suffered by the defendant;

---

[7]Of course, upon filing the instant Indictment, the Government voluntarily assumed this undertaking.  If the Government wishes to continue in this prosecution, it must use whatever resources are necessary to meet its Constitutional and court-ordered discovery obligations.

> and whether any less severe sanction will remedy the prejudice and the wrongdoing
> of the government.

Hastings, 126 F.3d at 317 (citing United States v. Maples, 60 F.3d 244, 247 (6th Cir. 1995)).

Sanctioning the Government by dismissing a criminal indictment is a drastic action for

discovery related abuses and is one which a district court has very limited authority to command.

Hastings, 126 F.3d at 317 (holding that dismissal of an indictment was extreme and inappropriate

where the Government failed to produce discovery evidence pursuant to court order); Bank of

Nova Scotia v. United States, 487 U.S. 250, 263 (1988) (holding that the court had no authority

to dismiss of an indictment for prosecutorial misconduct absent a finding of prejudice).

Even where Constitutional violations have occurred, an indictment should not be

dismissed unless the Court finds that the defendant suffered actual prejudice as a result of the

violation.  United States v. Morrison, 449 U.S. 361, 365-66 (1981) (holding that even in the face

of a deliberate Sixth Amendment violation, dismissal is plainly inappropriate "[a]bsent

demonstrable prejudice or substantial threat thereof"); Derrick, 163 F.3d at 807-08 (explaining

that dismissing the indictment without a finding of prejudice "clearly thwarts the public's interest

in the enforcement of its criminal laws . . . .").

Short of dismissal, the district court is accorded with a greater degree of discretion to

consider remedies such as compelling production or continuing the trial in order to ensure that

the Defendant's right to a fair trial is not compromised.  According to one commentator, the

majority of courts

> view the continuance as playing a critical role in assessing the potential for prejudice.
> Indeed, the preferred remedy, at least where the prosecution has acted in good faith,
> is to order immediate compliance with discovery requirements, and offer the defense
> a continuance so that it can take advantage of the delayed discovery.

Wayne R. LaFave et. al., Criminal Procedure § 20.6(b), 934 (2d ed. 1999); see also United States

v. Hammoud, 381 F.3d 316, 336 (4th Cir. 2004) (noting that continuing the trial is the preferred remedy for discovery violations).

**B. Discussion**

In applying these principles to the present case, it appears that dismissal is not warranted at this stage of the prosecution. As discussed above, potential exculpatory evidence may exist in this case that has yet to be identified and disclosed, both to the parties and to the Court. Given this underdeveloped state of discovery, the Court is not in a position to make determinations regarding the prejudicial impact of the alleged exculpatory evidence without knowing what that evidence is. While the potential for prejudice is certainly at issue here, without evidence of actual prejudice, the Court is not authorized to dismiss the instant indictment, especially where less severe remedies are available.

It remains clear, however, that the prospect of proceeding to trial on November 28, 2005, without exculpatory evidence presents a threat to Defendant's fundamental trial rights. At this time, the Government represents to the Court that it is making every effort to determine whether the previous U.S. Attorney fulfilled the Government's obligations pursuant to Judge Payne's Order and to ensure that Defendant is provided with all exculpatory evidence. Govt.'s Resp. at 10. As noted, this undertaking is likely to take considerable time. Thus, the Court finds that the interests of justice require the case to be continued so that the Government may come into compliance with its Constitutional and court-ordered discovery obligations. It is also in the interests of justice that Defendant stand trial at the soonest opportunity. Thus, the trial will be set at the earliest time possible which will allow Defendant to obtain and make effective use of all discovery materials. In addition, the Court will further order the Government to comply with a specific discovery timetable to ensure that end.

-13-

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss is **DENIED** and Defendant's Motion to Extend the Trial Date is **GRANTED**. Accordingly, the Court hereby **ORDERS** that the trial be continued from November 28, 2005, until February 21, 2006. Defendant's Motion to Compel Compliance With Previous Court Orders is **GRANTED**, in accordance with the specific timetable for discovery as ordered by the Court from the bench on November 17, 2005, and set forth as follows:

By December 19, 2005, the Government is hereby **ORDERED** to

1) deliver all documents and tangible evidence to Defendant in Newport News that will comply with Brady, Judge Payne's prior Order, and discovery required for the instant indictment;

2) reproduce all exculpatory evidence and deliver it to Defendant in Newport News, together with a complete index of all exculpatory evidence;

3) file the index of all exculpatory evidence with the Court and certify to the Court that it has complied with items (1) and (2); and

4) certify to the Court that it has exhausted its efforts to locate any and all documents and physical evidence which comply with Brady, Judge Payne's prior Order, and discovery required for the instant indictment.

By January 13, 2006, the Government is hereby **ORDERED** to

1) deliver to Defendant an index of all discovery documents and physical evidence; and

2) file a copy of such index with the Court and certify to the Court that an index of all the documents and physical evidence has been compiled and delivered to Defendant.

The Court further **ORDERS** that any document and its content or physical evidence that

-14-

is not delivered and indexed by the deadlines set by this Order will be excluded from evidence and not used at trial in original or by secondary testimony.

The Court further **ORDERS** that all documents that were filed under seal by the Government, which were ordered unsealed by Judge Payne in the Richmond prosecution, shall remain unsealed during the pendency of this case for the purpose of making them available to counsel for examination. All other documents filed under seal shall remain under seal, unless and until the Court has occasion to consider a motion of either party.

It is this Court's view that the trial should be held in the division in which the indictment was returned unless good cause exists to hold the trial elsewhere. The only issue presented for the Court's consideration regards whether the facilities in Newport News are sufficient to ensure that two in-custody witnesses that the Government intends for trial are kept separate. It appears to the Court that the facilities in Newport News are suitable as long as the witnesses testify on separate dates. Since neither party offers any reason why they may not testify in such manner, the Court **ORDERS** that this case be tried in the Newport News Division.

The Clerk is **REQUESTED** to mail a copy of this Order to all counsel of record and to the Clerk's Office for the Richmond Division of the United States District Court for the Eastern District of Virginia.

It is so **ORDERED**.


_____
/s/
*HENRY COKE MORGAN, JR.*
SENIOR UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
December 6, 2005